1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11  VILAY SIRIPHONE dba IKE'S              )      Civil No. 07cv1656-L(JMA)
    TRANSMISSION & CLUTCH,                 )
12                                         )      **ORDER GRANTING**
                         Plaintiff,        )      **DEFENDANT'S MOTION FOR**
13                                         )      **SUMMARY JUDGMENT [doc. #47]**
    v.                                     )      **and DIRECTING ENTRY OF**
14                                         )      **JUDGMENT**
    ACCEPTANCE INDEMNITY                   )
15  INSURANCE COMPANY,                     )
                                           )
16                       Defendant.        )
                                           )
17  _____ )

18          Vilay Siriphone ("Siriphone" or "plaintiff") filed his complaint on July 18, 2007,

19  asserting claims for breach of contract and breach of the covenant of good faith and fair dealing

20  based upon defendant Acceptance Indemnity Insurance Company's ("Acceptance") adjustment

21  and resolution of a claim for first-party coverage benefits arising out of a theft of tools at

22  plaintiff's business.

23          Defendant motion for summary judgment has been fully briefed and the Court considers

24  the motion on the papers submitted and without oral argument pursuant to Civil Local Rule

25  7.1(d)(1).

26      **A.      Background**

27          Siriphone owned and operated an auto repair shop, Ike's Transmission & Clutch.  On

28  May 12, 2005, plaintiff's business was broken into and tools and equipment were taken.  The

07cv1656

next day, plaintiff reported the theft to law enforcement authorities and to his insurance agent, Hal Rice.  Defendant Acceptance had issued a commercial insurance policy to Siriphone for his business located at 3629 Euclid Avenue, San Diego, California.

Upon receipt of Rice's report, defendant began an investigation of plaintiff's claim.  After the exchange of information concerning the value of standing inventory, the submission of inventories of claimed loss, and discussion of available coverage under the policy, the parties entered into a settlement agreement in June 2007.  Thereafter, plaintiff filed this action in the Superior Court of the State of California, County of San Diego and defendant removed the action on the basis of diversity jurisdiction.  Defendant now moves for summary judgment or alternatively for summary adjudication on plaintiff's breach of contract claim and prayer for punitive damages.[1]

## B.    Summary Judgment Standard

Federal Rules of Civil Procedure 56 governs the parties' burdens on summary judgment.  Rule 56(c) empowers the court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).  When a defendant moves for summary adjudication of plaintiff's claims, as is the case here, the moving party can meet its burden by pointing out the absence of

---

[1]    Plaintiff makes a frivolous argument that in its notice of motion, Acceptance did not request summary judgment on plaintiff's second cause of action for breach of the covenant of good faith and fair dealing and as a result, the Court should completely "ignore the argument" defendant makes in its memorandum of points and authorities.  (Opp. at 7.)  The purpose of a summary judgment motion is to have *all* claims disposed of.  If summary judgment cannot be entered on all of a party's claims, the moving party may properly and alternatively seek summary adjudication of certain claims.  This is precisely what defendant has done in this case.  In its notice of motion, defendant seeks summary judgment on *all* of plaintiff's claims or alternatively for summary adjudication of plaintiff's claims for breach of contract and punitive damages.  Plaintiff's contention that the Court should disregard defendant's argument concerning breach of the covenant of good faith and fair dealing is not worthy of consideration.

1   evidence from the nonmoving party.  *See Celotex*, 477 U.S. at 325; *see also Garneau v. City of*

2   *Seattle*, 147 F.3d 802, 807 (9th Cir. 1998).  If the movant meets his burden, the burden shifts to

3   the nonmovant to show summary adjudication is not appropriate.  *Celotex*, 477 U.S. at 317, 324.

4   The nonmovant must go beyond the pleadings to designate specific facts showing there are

5   genuine factual issues which "can be resolved only by a finder of fact because they may

6   reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

7   250 (1986).

8        A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury

9   could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  "Disputes over

10  irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec.*

11  *Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  When ruling on a

12  summary judgment motion, the court cannot engage in credibility determinations or weighing of

13  the evidence; these are functions for the jury.  *Anderson*, 477 U.S. at 255; *Playboy Enters., Inc.*

14  *v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002).  The court must view the evidence in the light most

15  favorable to the nonmoving party, and draw all reasonable inferences in favor of the

16  non-movant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

17  *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002), *cert. denied*, 537 U.S.

18  1106 (2003).

19       In opposition to defendant's motion for summary judgment, plaintiff filed a responsive

20  memorandum; exhibits consisting of excerpts from the depositions of Hank Slonecker and

21  Robert Hughes and a letter dated April 11, 2006, drafted by plaintiff's counsel Andy Van Le to

22  Hank Slonecker; and the declaration of counsel Van Le.  Defendant objects to portions of the

23  Van Le declaration because they lack foundation, are speculative, and/or are inadmissible

24  hearsay.  Plaintiff did not respond to defendant's objections.  Having reviewed the Van Le

25  declaration, the Court sustains defendant's objections and will not take into account those

26  portions of the declaration in considering the motion for summary judgment.   In addition to

27  defendant's objections, the Court notes that a party's counsel's declaration is not an appropriate

28  vehicle for arguing the party's position.  Much of Van Le's declaration is nothing more than

1  additional unsupported argument that should have been presented, if at all, in the memorandum
2  of points and authorities.  As a result, the Court disregards arguments made by counsel Van Le
3  in his declaration.

4      **C.**    **Breach of Contract**

5      Plaintiff's first cause of action is for breach of contract.   In California, "[a] cause of
6  action for breach of contract requires proof of the following elements: (1) existence of the
7  contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and
8  (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal.
9  App.4th 1226, 1239 (2008).

10      It is undisputed that the parties entered into a settlement of plaintiff's claim.  Assurance
11  never refused to pay plaintiff's claim and did, in fact, make payment under the insurance
12  contract for plaintiff's loss.   Plaintiff accepted defendant's payment under the contract.

13      Recognizing that "his breach of contract claim cannot succeed to the extent it relies
14  *exclusively* on Acceptance's failure to pay him full value for the loss he incurred, " plaintiff
15  contends that the breach of contract claim remains viable because "Acceptance engaged in
16  *multiple* acts which constitute a breach of its insurance contract."  (Opp. at 5. (emphasis in
17  original.))  Plaintiff's contention is without merit.  The acts plaintiff recites as forming a cause
18  of action for breach of contract, e.g., defendant failed to conduct a full and complete
19  investigation, are properly asserted in a cause of action for breach of the implied covenant of
20  good faith and fair dealing.  Plaintiff's misguided attempt to conflate a breach of contract and a
21  breach of the implied covenant of good faith and fair dealing claim must fail.

22      Because the parties entered into a settlement of their dispute in which defendant paid
23  plaintiff for his loss under the terms of the policy, defendant did not breach the contract.
24  Defendant is entitled to judgment on plaintiff's breach of contract claim.

25      **D.**    **Breach of the Covenant of Good Faith and Fair Dealing**

26      Under California law, all insurance contracts contain an implied covenant of good faith
27  and fair dealing.  *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818, 169 Cal. Rptr.
28  691(1979).  The implied covenant is based on the principle "that neither party will do anything

1   which will injure the right of the other to receive the benefits of the agreement." *Waller v. Truck*

2   *Ins. Exch., Inc.*, 11 Cal.4th 1, 36 (1995).

3           When an insurer delays or denies payment of policy benefits unreasonably or without

4   proper cause, the implied covenant of good faith and fair dealing is breached. *Jordan v. Allstate*

5   *Ins. Co.*, 148 Cal. App. 4th 1062, 1072 (2007); *see also Wilson v. 21st Century Ins. Co.*, 42

6   Cal.4th 713, 723 (2007) ("an insurer's denial of or delay in paying benefits gives rise to tort

7   damages only if the insured shows the denial or delay was unreasonable.").

8           As discussed above, the Court concludes as a matter of law that defendant is entitled to

9   summary judgment on plaintiff's breach of contract claim.  Nevertheless, a breach of the

10  covenant of good faith and fair dealing claim may be established without a breach of contract.

11  *See Brehm v. 21st Century Ins. Co.*, 166 Cal. App.4th 1225, 1236 (2008) (an insurer may be

12  liable for bad faith where improper claims handling causes detriment to the insured even if the

13  insurer pays the full limits of its policy).

14          "[T]he reasonableness of an insurer's claim-handling conduct is ordinarily a question of

15  fact." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1009-10 (9th Cir. 2004)

16  (citing *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002).  However,

17  "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine

18  dispute with its insured as to the existence of coverage liability or the amount of the insured's

19  coverage claim is not liable in bad faith even though it might be liable for breach of contract."

20  *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 724 (2007)(quoting *Chateau Chamberay*

21  *Homeowners Assn. v. Associated Internat. Ins. Co.,* 90 Cal. App.4th 335, 347 (2001)).

22          As the *Wilson* Court explained:

23              The genuine issue rule in the context of bad faith claims allows a [trial] court to
                grant summary judgment when it is undisputed or indisputable that the basis for
24              the insurer's denial of benefits was reasonable – for example, where even under the
                plaintiff's version of the facts there is a genuine issue as to the insurer's liability
25              under California law.

26  *Id.* (quoting *Amadeo v. Principal Mut. Life Ins. Co.,* 290 F.3d 1152, 1161-1162 (9th Cir. 2002)).

27  Where a genuine dispute over coverage or the value of the insured's claim exists, summary

28  judgment may be granted to the insurer where the record demonstrates the absence of triable

07cv1656

1 issues "as to whether the disputed position upon which the insurer denied the claim was reached

2 reasonably and in good faith."  *Id.*

3       Plaintiff contends that Assurance acted in bad faith by conducting an inadequate and

4 error-filled investigation into his claim.  Specifically, plaintiff faults defendant for speaking to

5 plaintiff's wife about the claim rather than speaking directly with the insured; for improperly

6 determining the available coverage under the policy; and for improperly valuing the stolen tools

7 and the standing inventory.  As a result of these acts, plaintiff argues there were no genuine

8 disputes that would entitle defendant to summary judgment.

9               **1.**    **Contact with the Insured**

10       In initially placing a value on plaintiff's loss, defendant spoke with plaintiff's wife, Jean

11 Siriphone.  Although not the insured, Mrs. Siriphone represented to defendant that she was the

12 office and business manager at Ike's and the stolen tools were worth $400,000.  As a result of

13 that representation, defendant applied a co-insurance factor to the loss.  A co-insurance factor is

14 intended to prevent or at least discourage an insured from underinsuring its inventory and when

15 applicable, will limit the amount of loss available to the insured based on a formula provided in

16 the policy .  (Exh. F-17 at 8, § F.)

17       Plaintiff contends that defendant acted in bad faith by "engag[ing] in the unacceptable,

18 absurd practice of refusing to interview or personally meet with its sole insured – Vilay

19 Siriphone – to obtain his estimate of the value of his stolen tools . . . ."  (Opp. at 10.)   First,

20 plaintiff has failed to provide any evidence that defendant ever refused to meet with plaintiff.  In

21 a July 19, 2005 preliminary report letter from the claims adjusting service manager, Hank

22 Slonecker, to defendant, Slonecker noted that he

23
24         attempted to reached the insureds and were finally successful in doing so.  We
        advised Mrs. Siriphone of our involvement and made an appointment to meet *with*
        *them* at the insured place of business in order to obtain a recorded statement. . . .
25         We arrived at the insured place of business on the date agreed and *Mr. Siriphone*
        was not available.

26 (Exh. E-11 at 1-2 (emphasis added).)

27       Further, as the deposition of plaintiff makes clear, plaintiff authorized his wife to handle

28 the dealings with the insurance company:

07cv1656

| | | |
|---|---|---|
| 1 | A. | I told – I did tell her.  Say, you know what, just go ahead and deal with |
| 2 | | them because you more speaking English better than me. |
| 3 | Q. | So you asked your wife to handle the dealings with the insurance company? |
| 4 | A. | Yes, but I told her if you dealing with them, don't push back and forth to |
| 5 | | me and back and forth to you, and we can get messed up.  So just go ahead |
| 6 | | and deal with them.  And after they pay us, we be done and we okay. |
| 7 | Q. | You just wanted one person dealing with the insurance company? |
| 8 | A. | Yes, sir. |

9  (Defendant's Exh. Z, Vilay Siriphone's Depo. at 178.)

10       Plaintiff also states that once it obtained the $400,000 estimate from Mrs. Siriphone,

11  "Acceptance ended its 'investigation' for all practical purposes, as evidenced by the fact that it

12  never chose to even attempt to contact its insured, Mr. Siriphone, thereafter."  (Opp. at 11.)

13  Notwithstanding plaintiff's assertion, the investigation remained ongoing as evidenced by Mr.

14  Slonecker's reports to defendant.  Andy Van Le began legal representation of plaintiff in March

15  2006 at which time defendant communicated with counsel.  It is undisputed that during the time

16  of his representation of plaintiff, Acceptance offered a compromise figure $250,000 and then

17  $150,000 for the value of the standing inventory.  In August 2006, Acceptance continued its

18  investigation by contacting the insured's insurance agent who advised that the standing

19  inventory at the insured premises was between $100,000 and $150,000.  In response to

20  information gathered in its ongoing investigation, Acceptance agreed to waive the co-insurance

21  provision entirely.

22       There is a total absence of evidence showing defendant ended its investigation of

23  plaintiff's claim. Accordingly there is and can be no showing that defendant ended its

24  investigation of plaintiff's claim based on its conversations with Mrs. Siriphone.  Plaintiff's

25  unsupported argument that contact with Mrs. Siriphone rather than plaintiff demonstrates bad

26  faith is without legal or factual merit.

27  / / /

28  / / /

07cv1656

1
        2.      **Coverage Limit**

2         By letter dated June 30, 2005, Bob Hughes, an Acceptance claims examiner, noted that

3  the insurance policy, CG00003938, was effective March 29, 2005 to March 29, 2006 and

4  provided contents limits of $80,00 on Premises 1, Building 1 and $20,000 on Premises 1,

5  Building 2, both of which were subject to a $1,000 deductible.  (Dft's Exhibits [doc. no. 47-7 at

6  3].)   Because the theft occurred in Building 1 only, Acceptance placed the available coverage

7  for plaintiff's loss at $80,000.

8         Plaintiff made a demand for combined coverage of $100,000 because the declarations

9  page identified two buildings, each with separate limits of coverage, but it listed only a single

10 address for both buildings when in fact the buildings had different street addresses.  After

11 considering plaintiff's demand, Acceptance agreed to a limit of contents coverage of $100,000

12 by combining the separate limits of coverage on each of the two insured buildings on the insured

13 premises.

14        In contending that there was no genuine dispute between plaintiff and defendant over

15 coverage limits, plaintiff states "his attorney (Mr. Van Le) educated Acceptance about its

16 *mistake* in terms Acceptance could understand."  (Opp. at 10. (emphasis added))  The implied

17 covenant of good faith requires insurers to be reasonable, not flawless.  *See, e.g., California*

18 *Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App.3d 1, 55 (1985) (mistakes made by

19 insurance company in handling of claim do not constitute bad faith; proper standard is "unfair

20 dealing"); *Congleton v. National Union Fire Ins. Co.*, 189 Cal. App.3d 51, 59 (1987).

21        Bad faith implies dishonesty, fraud and concealment. *Merritt v. Reserve Ins. Co.*, 34 Cal.

22 App.3d 858, 876 (1973); accord, *Hodges v. Standard Accident Ins. Co.*, 198 Cal. App.2d 564,

23 574 (1962).  Mistakes or negligence in claims handling do not support a cause of action for bad

24 faith.  *Aceves v. Allstate Ins. Co.*, 68 F .3d 1160, 1166 (9th Cir. 1996) ("In California, mere

25 negligence is not enough to constitute unreasonable behavior and does not establish a breach of

26 the implied covenant of good faith and fair dealing in an insurance case").  To constitute bad

27 faith, an insurer's conduct must demonstrate "a failure or refusal to discharge contractual

28 responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a

07cv1656

1   conscious and deliberate act . . . ." *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App.

2   4th 1093, 1105 (1996), abrogated on other grounds by *Cel-Tech Comm., Inc. v. Los Angeles*

3   *Cellular Telephone Co.*, 20 Cal.4th 163 (1999).

4          Given the identification of two buildings on the property on the declaration page of the

5   policy, it was reasonable for defendant to initially find content coverage at $80,000.  In other

6   words, there was a genuine dispute about the coverage limits.  Plaintiff has provided no evidence

7   to support bad faith on the part of defendant particularly when he characterizes defendant's

8   position as a "mistake" and  defendant subsequently agreed to contents coverage of $100,000

9                    **3.      Replacement Value of Stolen Tools**

10         Plaintiff contends that defendant acted in bad faith in evaluating the replacement value of

11   the tools taken.  Specifically, plaintiff states that defendant committed "egregious mistakes" by

12   applying a wholesale price tool catalog rather than a retail price tool catalog in valuing plaintiff's

13   loss.

14          In a letter dated August 30, 2005, Hank Slonecker provided a status report to Bob Hughes

15   at Acceptance in which Slonecker noted that replacement prices for certain tools were accurate

16   but with respect to Snap-On tools, "we found tremendous discrepancy in the replacement cost

17   the insured indicated verses the amounts we confirmed utilizing the Snap-On Tool price catalog .

18   . . ." (Exh. G-19).   The report indicated that plaintiff had valued the tools at $87,617.85,

19   including tax, but the actual replacement cost was $27,711.89, including tax.  *Id.*  John Crabb,

20   Acceptance's party arbitrator, informed defendant that the price list it had used in valuing these

21   tools reflected wholesale rather than retail prices.  As a result of this information, defendant

22   increased its offer to plaintiff which, as noted above, was accepted and resulted in a settlement of

23   the claim.

24          As discussed above, a mistake in claims handling does not support a claim for bad faith.

25   Indeed, the evidence presented here shows that defendant was responsive to *all* of plaintiff's

26   demands.  Plaintiff's contention that defendant's willingness to reexamine its position based

27   upon new information and continuing investigation demonstrates bad faith in the total absence of

28   *any* evidence of dishonesty, fraud or concealment on the part of defendant is without merit.

1

### 4.    Conclusion

Defendant has come forward with admissible evidence showing it took its claim adjusting positions based upon the terms of the policy, information provided by plaintiff and plaintiff's authorized spokespersons (Mrs. Siriphone and plaintiff's counsel), and its ongoing investigation of plaintiff's claims.  On the other hand, plaintiff has failed to present any evidence to show that the disputed positions defendant took in adjusting and resolving plaintiff's claim were unreasonable and not taken in good faith.  As a result, there is no genuine issue of material fact in dispute and defendant is entitled to judgment as a matter of law on plaintiff's claim for breach of the covenant of good faith and fair dealing.

### E.    Punitive Damages

Because as a matter of law defendant did not breach either the contract or the duty of good faith and fair dealing, plaintiff may not obtain punitive damages.

### F.    Conclusion

Based on the foregoing, defendant's motion for summary judgment is **GRANTED**.  The Clerk of the Court is directed to enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED:  August 24, 2009

M. James Lorenz
United States District Court Judge

COPY TO:

HON. JAN M. ADLER
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

07cv1656